IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 13-cv-01862-CMA

CHERYL A. BELLON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING ALJ'S DECISION DENYING DISABILITY BENEFITS

This matter is before the Court on Plaintiff Cheryl Bellon's appeal of the Commissioner's decision denying her claim for disability benefits. Exercising jurisdiction under 42 U.S.C. § 405(g), this Court affirms the judgment of the Administrative Law Judge ("ALJ").

### I. BACKGROUND

At the alleged onset date of Plaintiff's disability in April 1998, Plaintiff was 44 years old. She claims she has been disabled since that date due to "cervical cancer, anxiety attacks, arthritis, diarrhea[, and] nausea." AR 201. As alleged by Plaintiff, these symptoms have manifested principally as follows:

- *Anxiety*: Plaintiff alleges she first experienced anxiety attacks in the mid-1990s and that they caused her to avoid social events and crowded places. These problems persist to this day.

- *Diarrhea*: Plaintiff was diagnosed with cervical cancer in 1996. She underwent chemotherapy, which left her nauseated and with diarrhea. She claims that she has disabling diarrhea to this day, normally after eating meals, and that as a result she cannot maintain any activity that is far from—or precludes frequent trips to—a bathroom.

- *Arthritis and related limitations on motor function*: Plaintiff claims she suffers from arthritis in her shoulders, hands, right hip, both knees, and right ankle. This arthritis has caused her to have trouble with, *inter alia*, lifting and grasping objects. She further alleges that this arthritis is exacerbated by "clubbing," which the parties describe as the bulbous enlargement of the ends of one or more of Plaintiff's fingers.

*See, e.g.*, AR 41-48, 223, 225, 227, 230; *see also* Doc. # 18, at 5 n.2 (providing definitions of "clubbing").

Plaintiff's self-reporting about these disabilities is in tension with other evidence that is included in the record. As an initial matter, there is no medical evidence to support any of Plaintiff's contentions about her disabilities prior to 2008—this appears to be because Plaintiff decided not to provide any such evidence. Further, much of the evidence in the post-2008 medical records calls into question Plaintiff's allegations about her allegedly disabling anxiety,[1] diarrhea,[2] and arthritis.[3]

---

[1] *Compare, e.g.*, AR 41, 48, 222, 230 (reports from Plaintiff about her debilitating anxiety), *with* AR 353, 357, 360, 364 (reports from providers, even those who prescribed Plaintiff medication for anxiety and depression, who noted Plaintiff demonstrated a normal mood and affect); AR 67 (report in November 2010 from a non-examining psychologist, Dr. Hillary Weiss, who opined that Plaintiff had moderate limitations on her ability to interact appropriately with the general public but was not significantly limited in working with supervisors or coworkers); AR 328-31 (report in July 2010 from consultative psychologist Dr. Louis Hoffman, Ph.D., concluding that Plaintiff appeared somewhat anxious during his interview with her but that the anxiety would only "impact her to some degree in a work setting").

[2] *Compare, e.g.*, AR 244 (report from one physician in 2008 suggesting that based on Plaintiff's self-reporting, she had diarrhea and possible irritable bowel syndrome), *with* AR 283 (report from a physician assistant in 2010 noting no abnormal gastrointestinal examination findings); AR 278, 354, 356, 359, 363, 366, 369, 372, 376, 379 (reports from various medical providers in which Plaintiff registers no complaints about diarrhea).

On February 29, 2012, the ALJ issued a decision denying Plaintiff disability benefits. The ALJ followed the five-step sequential evaluation process for evaluating disability claims. AR 23-32. As relevant here, the ALJ concluded that Plaintiff retained the residual functional capacity "to perform a full range of work at all exertional levels with the following non-exertional limitation: no dealing with the general public." AR 29. Although Plaintiff had no past relevant work, the ALJ concluded—consistent with testimony from a vocational expert at a hearing on Plaintiff's claims—that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 31-32. Thus, the ALJ concluded that Plaintiff had not been under a disability between April 1, 1998, and the date of his decision. AR 32.

## II. STANDARD OF REVIEW

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner—through the ALJ—applied the correct legal standards. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less

---

3  *Compare, e.g.*, AR 42-43, 222, 225, 227, 230 (noting that Plaintiff reports that severe arthritis significantly limits her functional abilities); AR 329 (noting that during an interview Plaintiff was rubbing her hands frequently and reported that arthritic pain in her hands was a nine on a scale of one to ten), *with* AR 244 (report from one physician in 2008 noting that Plaintiff's "[e]xtremities have no arthritic changes")); AR 327 (report from a second physician in 2010 noting "what seem[s] to be the beginning of early osteoarthritis" but concluding that despite the arthritis, Plaintiff "still has [a] normal range of motion" and "no manipulative limitations"); AR 392 (report from a radiologist in September 2011 noting that an x-ray showed only mild arthritic changes and mild osteoarthritis).

3

than a preponderance. *Wall*, 561 F.3d at 1084. In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

### III. ANALYSIS

Plaintiff challenges the determination of the ALJ on a number of grounds. These arguments all fail principally because they amount to nothing more than attempts to have this Court reweigh evidence already considered by the ALJ. The Court considers each of these arguments in turn.[4]

First, Plaintiff suggests that the ALJ erred by "ignoring" the effect of Plaintiff's diarrhea on her functioning. Doc. # 17 at 11. The ALJ did nothing of the sort. In fact, the ALJ considered Plaintiff's claims about her diarrhea, *see, e.g.*, AR 29, but determined that these allegations could be discounted because they were inconsistent with Plaintiff's reported activities of daily living and because of the dearth of objective

---

[4] What follows is an attempt by this Court to impose some order on arguments haphazardly presented in Plaintiff's opening brief. Plaintiff suggests that she raises only two issues on review: (1) that the ALJ failed to properly determine her RFC and (2) that the ALJ erred at Step Five of the five-step sequential process for evaluating disability claims. Doc. # 17 at iii. In fact, there are numerous sub-arguments contained within Plaintiff's brief, which this Court believes are better categorized as separate arguments in the form presented below.

medical evidence supporting Plaintiff's position, *see, e.g.*, AR 26, 29.  Further, this conclusion was supported by substantial evidence: the ALJ considered the contradictory findings on the severity of Plaintiff's diarrhea, which are summarized in footnote 2 above, and then determined that this evidence weighed against a finding of disability. That this Court may have "made a different choice" on the weight to give the medical testimony on Plaintiff's diarrhea "had the matter been before it de novo," is irrelevant, in light of the deference owed the determination of the ALJ.  *Oldham*, 509 F.3d at 1257-58.

Second, Plaintiff criticizes the weight the ALJ gave to an assessment provided by Dr. Louis Hoffman, Ph.D., a consultative psychologist, who concluded that Plaintiff's anxiety would moderately impact her ability to work.  Doc. # 17 at 13-14.  In particular, Plaintiff cites two statements made by Dr. Hoffman in his report and finds that when read together they create an ambiguity that should have been investigated further by the ALJ.  In the portions of the report cited by Plaintiff, Dr. Hoffman stated as follows:

> Ms. Bellon indicated that she does have some periods of depression that will last about a week or more and she has them every couple of months. During these times she will experience anhedonia, low energy, sadness and crying, emotional numbness, feeling hopeless and helpless, feeling worthless, poor self-care, and decreased socialization.

AR 331.  One page later, in the conclusions section of his report, Dr. Hoffman stated: "Ms. Bellon does have some occasional mild depression, but this does not appear as if it would significantly impact any work related functions on a regular basis."  AR 332.

There is no ambiguity or inconsistency created as between these two statements.  The first is not a conclusion from Dr. Hoffman but rather contains only his report about the subjective statements made by Plaintiff.  The second, in contrast,

5

provides the doctor's own conclusion.  Further, Dr. Hoffman's conclusion that Plaintiff was occasionally depressed is supported by his observation that Plaintiff would endure some periods where she would endure some common symptoms of depression, such as low energy and feelings of hopelessness.[5]

Third, Plaintiff suggests that the ALJ ignored her complaints about the impact of her arthritis.  Doc. # 18 at 13.  Again, this contention mischaracterizes both the ALJ's opinion and the record.  The ALJ did not ignore Plaintiff's complaints about arthritis but rather found that she overstated their debilitating effect.  AR 29.  Further, notwithstanding Plaintiff's insinuations to the contrary, *see, e.g.*, Doc. # 17, at 18, no physician ever concluded that Plaintiff experienced manipulative limitations due to arthritis, even if some noted that she did indeed suffer from the ailment.  *Compare, e.g.*,

---

[5]  Plaintiff presents a related argument, Doc. # 18, at 17, in attempting to find inconsistency between the ALJ's conclusion that Plaintiff was limited to jobs that required "no dealing with the general public," AR 29, and Dr. Hoffman's contention that Plaintiff had "mild to moderate impairment in her ability to relate appropriately with customers, peers and supervisors," AR 332. Plaintiff claims that because the ALJ gave Dr. Hoffman's opinion significant weight "the same limitations with regard to the general public [should have] applied to co-workers and supervisors." AR 332.  Plaintiff's argument here fails because it relies on a number of unwarranted assumptions about the ALJ's reasoning.  First, Plaintiff assumes that the ALJ's sole rationale for imposing the "no dealing with the general public" limitation was Dr. Hoffman's report.  But other physicians, such as Dr. Weiss, applied the same distinction as the ALJ as between Plaintiff's contact with the general public and work colleagues, by noting that Plaintiff was "moderately" limited in her ability to interact appropriately with the general public but "not significantly limited" in her ability to work with supervisors or coworkers.  AR 67.  Second, Plaintiff assumes that if an ALJ gives substantial weight to a report suggesting "mild to moderate impairment" with regard to contact with one population and then imposes a limitation precluding all contact with that population, the ALJ "should" apply the same "no contact" limitation for every "mild to moderate impairment" the Plaintiff has with any population.  But common sense dictates that this cannot be the rule, for it would require the ALJ to impose very strict limitations on a claimant's abilities, even when a medical authority thought the claimant had only mild impairments or even if (as is the case here) there are important differences between the populations in question.  Third, Plaintiff assumes that the ALJ's failure to adhere to this (flawed) principle constitutes reversible error.  But Plaintiff cites no authority in support of this position and in any case, Dr. Weiss's analysis constitutes substantial evidence supporting the distinction on limitations drawn by the ALJ here.

AR 323 (report in July 2010 noting that Plaintiff had "the beginning of early osteoarthritis"), *with id.* (same report noting that she had no manipulative limitations). Finally, these same physicians consistently observed that Plaintiff walked with a normal gait, despite her claims of painful arthritis in her knees. *See, e.g.*, AR 278, 325, 377. The consistency in the medical evidence demonstrates that there is substantial evidence supporting the ALJ's conclusion as to this matter.

Fourth, Plaintiff argues that the ALJ erred in the manner in which he determined that, considering Plaintiff's residual functional capacity, she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Doc. # 17, at 23-24. This argument fails because its premise assumes that the ALJ erred in determining Plaintiff's RFC. But for the reasons stated above, the ALJ committed no such error. *Cf. Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (noting that although the agency bears the burden of proof at step five, that burden does not require the agency to address or assess exertional requirements for which the medical record provides no evidence of an impairment or limitation).

Finally, Plaintiff's remaining arguments fail because of the way Plaintiff's attorney has presented them to this Court. In short, throughout the briefing, Plaintiff's attorney: (1) introduces new (often conclusory) arguments in the middle of paragraphs that are related to other matters; (2) embraces a scattershot approach to argument that creates a serious impediment to this Court's ability to understand what Plaintiff is trying to argue and how this Court should categorize the arguments; (3) fails to explain his use of terms of art or various Social Security Administration regulations; and (4) commits basic

spelling and grammatical errors that demonstrate his failure to proofread his work in even a cursory manner. A good example of most of these deficiencies comes in the following paragraph from Plaintiff's brief, which the Court quotes in full.

> Arguendo, medical history and signs were not legitimate grounds for diagnosing and treating chronic diarrhea, the colonoscopy and other tests ruled out causes for diarrhea other than IBD, at 404.1528(c)(ref. laboratory findings) and demonstrated IBD as the reason for incontinence. Dr. Fraley diagnosed postprandial diarrhea, possible irritable bowel syndrome in 2008; the possibility was confirmed by tests in 2012.

Doc. # 17 at 12.

Because of the way it is written, this paragraph is unhelpful—in fact, of real detriment—to Plaintiff's cause: the paragraph's first sentence is incomprehensible, the citation to what this Court presumes is an SSA Regulation is incomplete, the term "IBD" (which this Court presumes refers to irritable bowel syndrome) is undefined anywhere else in the briefing, and the paragraph as a whole is devoid of citations to the record. Passages such as these, which are littered throughout Plaintiff's brief, present arguments that have been forfeited for purposes of this Court's review. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Eateries, Inc. v. J.R. Simplot Co.,* 346 F.3d 1225, 1232 (10th Cir. 2003) (concluding that appellant's superficial argument with no record citations or legal authority was "insufficient to garner appellate review"); *Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (reasoning, in the Social Security context, that "perfunctory complaints [that] fail to frame and develop

an issue sufficient to invoke appellate review" are forfeited and collecting further authorities in support of this proposition).[6]

### III. CONCLUSION

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching her adverse finding as to Plaintiff's disabilities.

Accordingly, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED.

It is FURTHER ORDERED that each party shall pay its own costs and attorney fees.

DATED: April  23 , 2014

BY THE COURT:

_[signature]_

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[6] The following arguments were insufficiently briefed to garner review by this Court: that Plaintiff has some sort of "standing limitation," that went unconsidered by the ALJ, Doc. # 17, at 15; that "supporting evidence of grip weakness" somehow undermines the ALJ's opinion, *id.* at 16-17; that there was a "failure to weigh certain 404.1526(d)(2) factors," *id.* at 16; and that "[t]he [ALJ's] decision is undermined by the failure to follow the *Luna* criteria," or SSR 96-7p or 96-8p, *id.* at 18. Plaintiff has forfeited each of these arguments because her attorney has failed to: (1) articulate the standard required under the law as it relates to each of these arguments, (2) explain how the ALJ contravened that standard, and/or (3) identify the specific authority in the record that supports Plaintiff's position. Further, in her Reply (Doc. # 19 at 2), Plaintiff vaguely suggests that it is necessary to analyze this case through the lens of additional evidence submitted to the Social Security Appeals Council. In advancing this argument, Plaintiff does not sufficiently describe what that evidence is, where it is in the record, or why exactly it is important. This argument is forfeited both because it is insufficiently developed and because it was raised for the first time in the Reply. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (noting that arguments raised for the first time in a reply brief are forfeited).